Kyle Gurwell (SBN 289298)
Law Office of Kyle Gurwell
7755 Center Ave Ste 1100
Huntington Beach CA 92647

(562) 600-9989
kng@lawofficekg.com

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHELLE GARZA and ARAYIK SHAHBAZIAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> - against - <br><br> ALBERTSONS COMPANIES INC., <br> Defendant. | Case No. 2:24-cv-2622 <br><br> Class Action Complaint <br><br> Jury Trial Demanded |

Michelle Garza ("Plaintiff Garza") and Arayik Shahbazian ("Plaintiff Shahbazian") ("Plaintiffs") allege upon information and belief, except for allegations about Plaintiffs, which are based on personal knowledge:

## I.     CONSUMER DEMAND FOR NATURAL FLAVORS

1.     According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

2.     Nielsen reports that the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

3.     The trade journal, Perfumer & Flavorist, described "The Future of

---

[1] Lauren Manning, *How Big Food is Using Natural Flavors to Win Consumer Favor*, Wall Street Journal.

Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[2]

4.      Mintel concluded that avoidance of artificial flavors is just as strong as consumers' desire for natural flavors, in "Artificial: Public Enemy No. 1."[3]

5.      Surveys by Nielsen, New Hope Network, and Label Insight confirmed that upwards of eighty percent of the public tries to avoid artificial flavors, believing them to be potentially unhealthy and contributing to a wide range of maladies.

6.      Over eighty percent of them believe foods with artificial flavors are less healthy than those with only natural flavors.

7.      One expert noted that "When [consumers] think about whether a food is healthy or not, [they] likely consider whether or not it has the word 'artificial' in the ingredients list."

## II.     LEGAL BACKGROUND

8.      Over 100 years ago, consumers were similarly concerned, based on the reports of muckraking journalists, about the harmful and untested chemicals that were added to their food.

9.      In response to this unregulated environment where synthetic molecules manufactured in laboratories substituted for the wholesome and natural ingredients promoted to consumers, the Pure Food and Drug Act of 1906 required disclosure of artificial flavoring to ensure the public would get what they paid for.

10.     These requirements were strengthened by the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 *et seq*.

---

[2] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

[3] Alex Smolokoff, Natural Color and Flavor Trends in Food and Beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring Today's Top Ingredient Trends and How They Fit Into Our Health-Conscious World, Mar. 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

11.     California adopted these laws through the Sherman Food, Drug, and Cosmetic Law ("Sherman Law"). Cal. Health & Safety Code ("HSC") § 109875, *et seq.*; HSC § 110100(a) (adopting federal regulations).

12.     The newly established Food and Drug Administration ("FDA") was aware of how companies used advanced scientific knowledge to substitute dangerous and unhealthy flavoring chemicals in place of promoted ingredients like fruits and natural fruit flavors.

13.     Beyond the potential to cause physical harm, these synthetic substances were significantly cheaper than the fruits and natural fruit flavors they replaced.

14.     The FDA knew that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging" to make quick purchasing decisions.[4]

15.     To facilitate an honest marketplace, it required that the source of a food's taste, whether the pictured ingredients, natural flavors from those ingredients, or synthetic sources, be conspicuously disclosed. 21 C.F.R. § 101.22(i).

16.     This was "premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[5]

17.     To reach this goal, the FDA defined a flavor as a substance which imparts taste. 21 C.F.R. §§ 101.22(a)(1) and (3).

18.     "Natural flavor" was made from the "essential oil, oleoresin, essence or

---

[4] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

[5] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, Aug. 11, 2006.

CLASS ACTION COMPLAINT
*Garza et al. v. Albertsons Companies Inc.*, No.   Case No. 2:24-cv-2622

extractive" from fruits or vegetables. 21 C.F.R § 101.22(a)(3).

19.     In contrast, "artificial flavor" was from synthetic or chemical sources. 21 C.F.R § 101.22(a)(1).

## III.   FLAVOR OF FRUITS AND BLUEBERRIES

20.     In developing lower cost artificial fruit flavors to replace natural fruit flavors, companies sought to better understand taste, the combination of sensations arising from specialized receptor cells in the mouth.[6]

21.     This was challenging because of the varieties of "taste," i.e., the taste of sour includes the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples (malic acid), and wines (tartaric acid).

22.     Each of those acids is responsible for unique sensory characteristics of sourness.

23.     Fruit flavors, including the flavor of blueberries, are the sum of the interaction between their nonvolatile compounds, such as sugars and organic acids, and volatile compounds, including aromatic hydrocarbons, aldehydes, ketones and esters.

24.     The prototypical sweet, tart, sour, and fruity taste of blueberries is based on the interaction of their free sugars, glucose and fructose, with its main organic acid of malic acid and secondary organic acids of citric acid and quinic acid, shown below.[7]

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Malic Acid | Citric Acid |
| Blueberry (Highbush, Jersey) | Malic Acid | Citric Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |

[6] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).

[7] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

| Chili Pepper (habanero) | Citric Acid | Malic Acid, Succinic Acid |
|---|---|---|
| Coconut | Malic Acid | Citric Acid |
| Cranberries (American varietals) | Malic Acid (64%) | Citric Acid |
| Dragon fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry (wild pentaploid, Turkish cultivars) | Malic Acid, Tartaric Acid | Citric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

25.     The naturally occurring L-Malic acid is what gives blueberries their characteristic tart, sour, sweet, and fruity taste that is valued by consumers.

26.     The amount and proportion of malic acid is a critical factor in producing this preferred tart, sweet and sour blueberry taste.

## IV.   DESPITE PROMOTING BLUEBERRIES AND NATURAL FLAVOR, TASTE COMES FROM ARTIFICIAL FLAVORING

27.     According to Paul Manning, president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[8]

---

[8] Keith Nunes, Using Natural Ingredients to Create Authentic, Fresh Flavors, Food

5

28.    To capture this trend, Albertsons Companies Inc. ("Defendant") sells Fruit & Grain Cereal Bars packaged in various shades of blue packaging with images of blueberries, next to two bars with dark blue filling, described as "Blueberry [ – ] Naturally Flavored" under the Signature Select brand ("Product").





29.    However, "Blueberry [ – ] Naturally Flavored" is false, deceptive, and/or misleading, because the Product uses artificial flavoring ingredients to create, simulate, resemble and reinforce its filling's blueberry taste.

30.    This is not disclosed on the front label or the fine print on the back in the ingredient list.

31.    While the ingredient list in fine print indicates the filling contains

Business News, Sept. 20, 2018.

blueberries and natural flavor, it also includes the synthetic form of malic acid.



**INGREDIENTS:** BLUEBERRY FILLING (INVERT SUGAR, CORN SYRUP, BLUEBERRY PUREE CONCENTRATE, SUGAR, GLYCERIN, MODIFIED CORN STARCH, SODIUM ALGINATE, CITRIC ACID, METHYLCELLULOSE, MONOCALCIUM PHOSPHATE, DICALCIUM PHOSPHATE, BLUEBERRY JUICE CONCENTRATE, MALIC ACID, FRUIT AND VEGETABLE JUICE FOR COLOR [CARROT AND HIBISCUS CONCENTRATES], NATURAL FLAVOR), WHOLE GRAIN ROLLED OATS,

32.    Since the ingredients are listed in order of predominance by weight, listing "Malic Acid" before "Natural Flavor" means the filling contains more artificial blueberry flavor than natural blueberry flavor. 21 C.F.R. § 101.4(a)(1).

A. <u>Two Types of Malic Acid</u>

33.    Malic acid has two isomers, or arrangements of atoms, L-malic acid and D-malic acid. 21 C.F.R. § 184.1069.

34.    These are right and left-hand versions of the same molecular formula.[9]



35.    L-malic acid occurs naturally in blueberries and is responsible for their characterizing fruity, sour, tart and/or sweet taste.

36.    D-malic acid does not occur naturally anywhere.

37.    D-malic acid is found as a racemic mixture of the D and L isomers, or DL-malic acid.

38.    The production of DL-malic acid begins with petroleum.

39.    It involves a catalytic process with numerous chemical reactions, including heating maleic anhydride with water under extreme pressure at 180°C.

40.    This results in an equilibrium mixture of malic and fumaric acids.

41.    The soluble fumaric acid is filtered and recycled, and the synthetic, or DL-, malic acid is concentrated and crystallized.

B. <u>Distinguishing L- from DL- Malic Acid</u>

42.    Since the two types of malic acid are closely related, companies may replace naturally occurring L-malic acid with the lower cost and synthetic DL-malic acid.

---

[9] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

43.    According to Wilhelmsen, adulteration involving the direct addition of foreign substances can be determined where there exist (1) well-defined detection limits, (2) sufficiently validated detection methods, and (3) knowledge the adulterant and/or any markers are not found in the food.[10]

44.    This is because any detection is indicative of adulteration, without complicated statistical or other analysis.

45.    Since plants do not synthesize D-malic acid, its presence in certain foods above established thresholds indicates this artificial version has been added.

46.    The most accepted method to determine if a food contains DL-malic acid is based, in part, on European Standard ("EN") 12138:1997, developed by the European Committee for Standardization ("CEN"), for the enzymatic determination of the total content of D-malic acid in fruit juices and related products.[11]

47.    This enzymatic approach is based on D-malate dehydrogenase ("D-MDH"), an enzyme that oxidizes D-malic acid ("D-malate") to pyruvate and carbon dioxide in the presence of an appropriate cofactor.

48.    D-malate is oxidized by nicotinamide adenine dinucleotide ("NAD") to oxaloacetate.

$$\text{D-malate} + \text{NAD} \xrightarrow{+\ \text{D-MDH}} \text{pyruvate} + CO_2 + \text{NADH} + H^+$$

49.    The oxaloacetate formed by this reaction is split into pyruvate and carbonic acid.

50.    The quantity of NADH formed is proportional to the concentration of D-malic acid and measured at a wavelength of 334, 340 or 365 nm.

51.    Laboratory analysis of the Product's filling was performed based on this

[10] Eric C. Wilhelmsen, "Food Adulteration," in Food Science and Technology, Marcel Dekker (2004).

[11] SIST EN 12138:1998, Fruit and Vegetable Juices – Enzymatic Determination of D-Malic Acid Content – NAD Spectrometric Method.

enzymatic method in accordance with accepted industry standards and protocols.

52.     Applying D-MDH, D-malic acid was preferentially oxidized over L-malic acid.

53.     The result was that the synthetic D-isomer of malic acid was identified above the appropriate threshold for this method, indicating the Product used artificial, DL-malic acid and not L-malic acid.

54.     This confirmed the Product contains more artificial blueberry flavor than natural flavors, because malic acid is listed ahead of natural flavor on the ingredient list.

55.     The combination of DL-malic acid with the free sugars from blueberries is not equivalent to the taste of blueberries and natural flavors.

56.     The addition of DL-malic acid imparts, creates, simulates, resembles and/or reinforces the characteristic tart, fruity, sweet, and sour taste that blueberries are known for.

57.     DL-malic acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable, or other natural source, but from petroleum, made through chemical reactions.

58.     DL-malic acid is an artificial flavoring ingredient.

59.     DL-malic acid does not supplement, enhance, or modify the original taste of blueberries, because it is a core component of its taste. 21 C.F.R. § 170.3(o)(11).

## V.     "NATURALLY FLAVORED" DESCRIPTION IS MISLEADING

60.     The consumer protection statutes of California are based on the standards of the Federal Trade Commission ("FTC"), which recognizes the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

61. Relevant laws consider not only representations made or suggested by statements and images, but also the extent to which they fail to prominently and conspicuously reveal facts relative to the proportions or absence of certain ingredients or other facts concerning ingredients in the food, which are of material interest to consumers. HSC § 110290.

62. The Product is "misbranded" and misleads consumers because its labeling is false or misleading in any particular. 21 U.S.C. § 343(a)(1); HSC § 110660.

63. The Product's labeling fails to prominently and conspicuously reveal facts relative to the proportions or absence of blueberries, natural flavors and artificial flavors.

64. This is because "Blueberry Naturally Flavored" tells consumers the filling's taste is from blueberries and natural flavors, even though it is provided in part by DL-malic acid, an artificial flavoring ingredient.

65. The replacement of blueberries and natural flavor with DL-malic acid, an artificial flavoring ingredient, is of material interest to consumers, because (1) these ingredients cost more than manufactured chemical compounds and (2) because consumers seek to avoid artificial flavors for reasons related to health, nutrition, and a desire for natural ingredients.

66. The failure to disclose the source of the Product's blueberry taste misleads consumers who expect its taste to come only from blueberries and natural flavors.

67. The Product is "misbranded" and misleading because the fruit and grain cereal bars are identified as "Blueberry – Naturally Flavored," which includes or suggests the ingredients of blueberries and natural flavors, but does not include artificial flavors, even though malic acid is identified on the ingredient list in fine print, notwithstanding it is not identified as an artificial flavoring ingredient. 21 U.S.C. § 343(a)(1); HSC § 110660; 21 C.F.R. § 101.18(b).

68. The Product is "misbranded" and misleading because "Blueberry

11

Naturally Flavored Fruit & Grain Cereal Bars" is not a truthful or non-misleading "common or usual name." 21 U.S.C. § 343(i); HSC § 110720.

69.     "Blueberry [–] Naturally Flavored Fruit & Grain Cereal Bars" does not "accurately identif[y] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); 21 C.F.R. § 101.3(b)(2).

70.     This is because it fails to disclose the source of its blueberry taste, based on the presence of DL-malic acid, an artificial flavoring ingredient which imparts the taste of blueberries. 21 C.F.R. § 101.22(i)(2).

71.     Federal and state regulations require that because the filling's taste is represented as "Blueberry," yet contains DL-malic acid that imparts the flavor of blueberries, "Blueberry" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Blueberry Flavored Fruit & Grain Cereal Bars," "Artificially Flavored Blueberry Fruit & Grain Cereal Bars," or "Blueberry [ – ] Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

72.     Instead, "Blueberry" is directly above the term, "Naturally Flavored," when this is false and misleading, based on the use of DL-malic acid, an artificial flavoring ingredient, to provide a blueberry taste.

73.     The Product is "misbranded" and misleading because even though it is required to conspicuously display that its blueberry taste is provided by artificial flavoring, it fails to disclose this anywhere. 21 U.S.C. § 343(f); HSC § 110705.

74.     The Product is "misbranded" and misleading because it includes artificial flavoring in the form of DL-malic acid but "it [does not] bear[s] labeling stating that fact." 21 U.S.C. § 343(k); HSC § 110740.

## VI.   CONCLUSION

75.     By adding the synthetic ingredient of DL-malic acid, purchasers do not receive a product that is "Naturally Flavored" but one that is artificially flavored.

76.    The Product could have included more of the highlighted fruit ingredient of blueberries, L-malic acid from blueberries or natural flavoring from sources other than blueberries but used artificial DL-malic acid because it cost less and/or more accurately imparted, provided, simulated, resembled, and reinforced the taste of blueberries.

77.    By adding the synthetic ingredient of DL-malic acid, purchasers get a smaller amount of blueberries and natural flavor than what is promised by the front label.

78.    Consumers buying fruit filled cereal bars labeled as naturally flavored without any indication that artificial flavoring supplies the filling's taste are seeking to avoid synthetic ingredients like DL-malic acid, created in a laboratory.

79.    As a result of the false and misleading representations and omissions, the Product is sold at a premium price, around $2.99 for eight bars, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## **PARTIES**

80.    Plaintiff Michelle Garza is a citizen of Los Angeles County, California.

81.    Plaintiff Arayik Shahbazian is a citizen of Los Angeles County, California.

82.    Defendant Albertsons Companies Inc. is a Delaware corporation with a principal place of business in Idaho.

83.    Defendant operates hundreds of grocery stores across the United States, including in California.

84.    These include Safeway, Albertsons, Vons, and Pavilions.

85.    While Albertsons sells leading national brands of products, it also sells many products under one of its private label brands, Signature Select.

86.    Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

87.     Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

88.     Products under the Signature Select brand have an industry-wide reputation for quality.

89.     In releasing products under the Signature Select brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

90.     Albertsons gets national brands to produce its private label items due its loyal customer base and tough negotiating.

91.     Private label products under the Signature Select brand benefit by their association with consumers' appreciation for the Albertsons brand overall.

92.     That Signature Select-branded products met this high bar was or would be proven by focus groups, which rated them above their name brand equivalent.

93.     A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands [like Signature Select] are good alternatives to national brands, and more than 60 percent consider them to be just as good."

94.     Private label products generate higher profits for retailers like Albertsons because national brands spend significantly more on marketing, contributing to their higher prices.

95.     The development of private label items is a growth area for Albertsons, as they select only top suppliers to develop and produce Signature Select products.

96.     Plaintiffs are like most consumers and prefer foods with natural ingredients and natural flavors.

97.     Plaintiffs are like most consumers and try to avoid foods with artificial flavors, based on the belief they are potentially harmful, not natural, and unhealthy.

98.     Plaintiffs are like most consumers and look to the front label of foods to see what they are buying and to learn basic information about it.

99.   Plaintiffs are like most consumers and are accustomed to the front label of packaging telling them if what they are buying gets its taste from artificial flavoring.

100.   Plaintiffs are like most consumers and when they see that a front label does not disclose artificial flavoring, they expect its taste is from the identified ingredients and/or natural flavoring.

101.   Plaintiffs are like most consumers and when they see a label that tells them a food is "Naturally Flavored," they do not expect its taste to be from artificial flavoring and/or that it will contain artificial flavoring ingredients.

102.   Plaintiffs read, saw, and relied on the packaging and label statements of Blueberry Naturally Flavored Fruit & Grain Cereal Bars, in various shades of blue, with images of blueberries, next to two bars with dark blue filling.

103.   Plaintiffs expected the Product's blueberry filling's taste was from blueberries and natural flavors, not artificial flavor.

104.   Plaintiffs relied on the omission of artificial flavoring from the front label as it related to the taste of the Product's blueberry filling.

105.   Plaintiffs did not expect that in addition to blueberries and natural flavors, the Product's fruit filling would use artificial flavoring in the form of the synthetic compound of DL-malic acid to provide its blueberry taste.

106.   Plaintiffs did not expect that the Product would use artificial flavoring ingredients in place of adding more blueberries and natural flavors.

107.   Plaintiffs bought the Product with the labeling identified here, Blueberry Naturally Flavored Fruit & Grain Cereal Bars, in various shades of blue, with images of blueberries, next to two bars with dark blue filling, at around the above-referenced price.

108.   Plaintiffs purchased the Product between February 2020 and February 2024, at Albertsons-owned and controlled stores in Los Angeles County, California and/or other areas.

109.   Plaintiffs paid more for the Product than they would have had they known its fruit filling's taste was from artificial flavoring instead of only from blueberries and natural flavor, as they would not have bought it or would have paid less.

110.   The Product was worth less than what Plaintiffs paid, and they would not have paid as much absent Defendant's false and misleading statements and omissions.

111.   Plaintiffs chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

112.   Plaintiffs intend to, seek to, and will purchase the Product again when they can do so with the assurance its representations are consistent with its attributes, features, and/or composition.

113.   Plaintiffs are unable to rely on the representations not only of this Product, but other similar cereal bars described as being naturally flavored and/or made with real fruit, because she is unsure whether those representations are truthful.

114.   If Defendant's labeling were to be truthful, Plaintiffs could rely on the labeling of other such products.

## JURISDICTION

115.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

116.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

117.   Plaintiffs are citizens of California.

118.   Defendant is a citizen of Delaware based on its corporate formation.

119.   Defendant is a citizen of Idaho based on the location of its principal place of business.

120.   The class of persons Plaintiffs seek to represent includes persons who are citizens of a different state from which Defendant is a citizen.

121.   The members of the proposed class Plaintiffs seek to represent are more

16

than one hundred, because the Product has been sold at grocery stores owned and operated by Albertsons under the names including Safeway, Albertsons, Vons, and Pavilions, in this State and online to citizens of this State.

122.   The Court has jurisdiction over Defendant because it transacts business within California and sells the Product to consumers within California from grocery stores owned and operated by Albertsons under the names including Safeway, Albertsons, Vons, and Pavilions, in this State and online to citizens of this State.

123.   Defendant transacts business in California, through the sale of the Product to citizens of California from grocery stores owned and operated by Albertsons under the names including Safeway, Albertsons, Vons, and Pavilions, in this State and online to citizens of this State.

124.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

125.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

126.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, origin, type, amount, and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## **VENUE**

127.   Venue is in this District with assignment to the Western Division because a substantial or the entire part of the events or omissions giving rise to these claims

occurred in Los Angeles County, which is where Plaintiffs' causes of action accrued.

128.   Plaintiffs purchased, paid money towards or for, used and/or consumed the Product in reliance on the labeling identified here in Los Angeles County.

129.   Plaintiffs became aware the labeling and packaging was false and misleading in Los Angeles County.

130.   Plaintiffs resides in Los Angeles County.

## CLASS ALLEGATIONS

131.   Plaintiffs seek to represent the following class:

> All persons in California who purchased the Product in California during the statutes of limitations for each cause of action alleged, in reliance on the representations and omissions identified here.

132.   Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

133.   Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiffs and class members are entitled to damages.

134.   Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

135.   Plaintiffs are adequate representatives because their interests do not conflict with other members.

136.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

137.   The class of persons is sufficiently numerous because the Product has been sold with the representations and omissions identified here for several years

throughout the States Plaintiffs are seeking to represent, and it was bought by thousands of consumers.

138.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

139.   Plaintiffs' Counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

140.   Plaintiffs seek injunctive relief because the practices continue.

## CLAIMS FOR RELIEF

### FIRST CLAIM
**Violation of California's Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200, *et seq.***

141.   To the extent required, Plaintiffs incorporate paragraphs 1-79.

142.   California's Unfair Competition Law, BPC § 17200, *et seq.* ("UCL"), prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

143.   Defendant's representations and omissions are "unlawful" because they violate the following sections of the FFDCA and the Sherman Law:

| Federal | State |
|---|---|
| 21 U.S.C. § 343(a)(1) | HSC § 110660 |
| 21 U.S.C. § 343(f) | HSC § 110705 |
| 21 U.S.C. § 343(k) | HSC § 110740 |
| 21 U.S.C. § 343(i) | HSC § 110720 |
| 21 C.F.R. § 101.3(b)(2) | |
| 21 C.F.R. § 101.18(b) | HSC § 110100(a) |
| 21 C.F.R. § 101.22(i) | |
| 21 C.F.R. § 101.22(i)(2) | |

19

21 C.F.R. § 102.5(a)

144.   Defendant's conduct is "unlawful" because it violates California's False Advertising Law, BPC § 17500, *et seq.* ("FAL"), and Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").

145.   Each of the challenged statements and omissions violates the FFDCA, Sherman Law and FAL, and therefore violates the "unlawful" prong of the UCL.

146.   The purpose of the UCL is to protect consumers against unfair and deceptive practices.

147.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

148.   The labeling of the Product violated the UCL because the representations and omissions that its filling's taste was only from the identified ingredients of blueberries and natural flavor, when it contained added artificial flavoring in the form of DL-malic acid, was unfair and deceptive to consumers.

149.   Plaintiffs believed the Product's filling got its taste only from the identified ingredients of blueberries and natural flavor, even though it contained artificial flavoring which provided its blueberry taste in the form of DL-malic acid.

150.   Plaintiffs paid more for the Product and would not have paid as much if they knew that in addition to blueberries and natural flavor, the filling's blueberry taste was from added artificial flavoring in the form of DL-malic acid.

151.   Plaintiffs seek to recover for economic injury and/or loss they sustained based on the misleading labeling and packaging of the Product, a deceptive practice under the UCL, by paying more for it than they otherwise would have.

152.   Plaintiffs will produce evidence showing how they and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

153.   As a result of Defendant's misrepresentations and omissions, Plaintiffs and class members suffered damages in the price premium paid for the Product, which is the difference between what they paid for it and how much it would have been sold for without the false and misleading representations and omissions identified here.

154.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence corrective advertising.

## SECOND CLAIM
### Violation of California's False Advertising Law,
### Cal. Bus. & Prof. Code § 17500, *et seq.*

155.   To the extent required, Plaintiffs incorporate paragraphs 1-79.

156.   The FAL prohibits false and/or misleading representations and omissions.

157.   Defendant makes "false [and] misleading advertising claim[s]" by deceiving consumers that the Product's filling got its taste only from the identified ingredients of blueberries and natural flavor, even though it contained added artificial flavoring to supply its blueberry taste in the form of DL-malic acid.

158.   In reliance on this false and misleading advertising, Plaintiffs purchased, used, and/or consumed the Product without knowledge it contained added artificial flavoring to supply its blueberry taste in the form of DL-malic acid.

159.   Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

160.   Plaintiffs seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## THIRD CLAIM
### Violation of California's Consumers Legal Remedies Act,
### Cal. Civ. Code § 1750, *et seq.*

161.   To the extent required, Plaintiffs incorporate paragraphs 1-79.

162.   The CLRA prohibits deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or

21

household purposes.

163.   Defendant's policies, acts, and practices were designed to, and did, result in Plaintiffs' purchase, consumption and/or use of the Product primarily for personal, family, or household purposes, and violated and continue to violate sections of the CLRA, including:

a.   Civil Code § 1770(a)(5), because Defendant represented that the Product had characteristics, attributes, features, capabilities, uses, benefits, and qualities it did not have;

b.   Civil Code § 1770(a)(9), because Defendant advertised the Product with an intent not to sell it as advertised; and

c.   Civil Code § 1770(a)(16), because Defendant represented that the Product had been supplied in accordance with its previous representations, when it was not.

164.   Pursuant to Cal. Civ. Code § 1782(a), Plaintiffs have or will send a CLRA Notice to Defendant concurrently with the filing of this action or shortly thereafter, which details and includes these violations of the CLRA, demand correction of these violations, and provide the opportunity to correct these business practices.

165.   If Defendant does not correct these business practices, Plaintiffs will amend or seek leave to amend the Complaint to add claims for monetary relief, including restitution and actual damages under the CLRA, and injunctive relief to enjoin the unlawful methods, acts and practices alleged, pursuant to Cal. Civ. Code § 1780.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, pray for judgment and relief as follows:

A.   Certification of the Class, designating Plaintiffs as representatives and Plaintiffs' Counsel as counsel for the Class;

B.  A declaration that Defendant has committed the violations alleged;

C.  For injunctive relief the Court deems appropriate;

D.  For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.*, and Cal Civ. Code § 1780, except for monetary damages under the CLRA;

E.  Compensatory damages, the amount to be determined at trial, except for monetary damages under the CLRA;

F.  For attorneys' fees, costs, and interest;

G.  For such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all causes of action so triable.

Dated:   April 1, 2024

Respectfully submitted,

/s/  Kyle Gurwell

Kyle Gurwell (SBN 289298)
Law Office of Kyle Gurwell
7755 Center Ave Ste 1100
Huntington Beach CA 92647
(562) 600-9989
kng@lawofficekg.com

*Attorney for Plaintiffs*

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Certificate of Service**

I certify that on April 1, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Kyle Gurwell